T.C. Memo. 2010-101

UNITED STATES TAX COURT

CHARLES PITTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6463-09L.                    Filed May 6, 2010.

P's duly assessed income taxes for 1991, 1992, and 1993 were still unpaid in 2008. The IRS filed a notice of Federal tax lien and gave P notice of the filing and of his right to a collection due process (CDP) hearing before R's Office of Appeals (Appeals) under I.R.C. sec. 6320(b). P requested a hearing. Appeals scheduled a hearing and asked P to submit financial information on Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals". P's representative requested that P's liability be classified as "currently not collectible" because of financial hardship, that the hearing take place in P's home because P is disabled, and that P be excused from submitting Form 433-A because of his hardship. Appeals offered to conduct the hearing by telephone or correspondence and repeated the request for Form 433-A. P did not provide the requested information, and Appeals issued a notice of determination sustaining the filing of the notice of lien. P appealed to this Court pursuant to I.R.C. sec.

6330(d)(1) and filed a motion for summary judgment. R filed a cross-motion.

Held: Appeals did not abuse its discretion in declining to conduct a face-to-face hearing in P's home.

Held, further, the Paperwork Reduction Act of 1995, 44 U.S.C. ch. 35 (2006), does not apply to CDP hearings; and Appeals did not abuse its discretion in requiring P's financial information on Form 433-A.

Anthony M. Bentley, for petitioner.

Mimi M. Wong, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: This case is an appeal by petitioner Charles Pitts, pursuant to section 6330(d)(1),[1] asking this Court to review the notice of determination issued by the Internal Revenue Service (IRS) sustaining the filing of a notice of Federal tax lien to collect Mr. Pitts's unpaid Federal income tax for tax years 1991, 1992, and 1993. The case is currently before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, we will deny petitioner's motion and grant respondent's motion.

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are based on Forms 4340, "Certificate of Assessments, Payments, and Other Specified Matters", for Mr. Pitts's taxable years at issue; on the undisputed documents submitted in support of the parties' cross-motions; and on court records of which we take judicial notice. Mr. Pitts did not raise any genuine issue as to these facts.

Mr. Pitts's non-payment of his taxes

Mr. Pitts filed no tax returns for the years 1991, 1992, and 1993. He has still not paid his income tax liabilities for those years, the collection of which is now the subject of this litigation. In September 1999 the IRS prepared substitutes for return and thereafter sent Mr. Pitts a statutory notice of deficiency pursuant to section 6212(a), determining deficiencies and additions to tax for those years. Mr. Pitts challenged that determination by filing a petition in the Tax Court in March 2000, commencing Pitts v. Commissioner, docket No. 3187-00. That case was concluded when Mr. Pitts agreed to the entry of a stipulated decision on February 9, 2001; and on August 6, 2001, the IRS assessed against Mr. Pitts the following amounts of tax and additions to tax pursuant to that decision, as well as interest thereon, totaling about $68,000:[2]

_____

[2]As of September 3, 2009--the latest date for which the record gives Mr. Pitts's balance due--he still owed $67,772.30
(continued...)

Additions to Tax

| Year | Tax | Sec. 6651(a)(1) | Sec. 6654 | Interest |
|------|-----|-----------------|-----------|----------|
| 1991 | $9,463 | $2,365.75 | $540.80 | $12,878.82 |
| 1992 | 9,782 | 2,445.50 | 426.66 | 11,480.56 |
| 1993 | 8,098 | 2,024.50 | 339.30 | 8,177.41 |
| Total | 27,343 | 6,835.75 | 1,306.76 | 32,536.79 |

In February 2003 Mr. Pitts filed a petition in the U.S. Bankruptcy Court for the Southern District of New York, commencing In re Pitts, No. 03-11021. That filing had the effect of staying IRS collection of his liabilities, pursuant to 11 U.S.C. sec. 362(a) (2000). The IRS filed a proof of claim in that proceeding that asserted Mr. Pitts's liability for his 1991 to 1993 taxes; Mr. Pitts objected to the proof of claim; and the bankruptcy court overruled the objection. We take judicial notice of the records of the bankruptcy court, which show that Mr. Pitts's bankruptcy case was closed in August 2008.

The IRS's notice of lien

On October 21, 2008, the IRS sent to Mr. Pitts a Letter 3172, "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320." The letter stated that the IRS had filed a notice of lien against Mr. Pitts with respect to his unpaid tax liabilities for 1991, 1992, and 1993, and that he had

---

[2](...continued)
for the three years. This balance appears not to include the eight years' worth of additional interest that had accrued since August 2001 but had not yet been assessed.

a right to request a so-called collection due process (CDP) hearing before the IRS Office of Appeals.

Initial attempt to schedule the CDP hearing

Through his counsel, Anthony M. Bentley, Mr. Pitts timely submitted to the IRS a Form 12153, "Request for a Collection Due Process or Equivalent Hearing".  Mr. Pitts's Form 12153 did not indicate what relief or collection alternative he desired, but the phrase "Bankruptcy Discharge" was written on the form.

In response to Mr. Pitts's request, a Settlement Officer[3] in the IRS Office of Appeals sent him and Mr. Bentley a letter dated December 30, 2008, which stated that Mr. Pitts's CDP hearing had been scheduled to be conducted as a telephone conference call on January 29, 2009.  The letter stated, "For me to consider alternative collection methods * * *, you must provide any items listed below", which included a "completed Collection Information Statement (Form 433-A * * *)".  A blank Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals", for Mr. Pitts to fill out was attached to the letter.

---

[3]Section 6330(b)(3) provides that the CDP hearing shall be held before "an officer or employee" of the Office of Appeals. Thereafter, the statute refers to this officer or employee as the "appeals officer".  See sec. 6330(c)(1), (3).  In the IRS Office of Appeals, hearings are held before persons with the title Appeals Officer and Settlement Officer.  See Reynolds v. Commissioner, T.C. Memo. 2006-192.  In this instance, the "officer or employee" who conducted the hearing had the title Settlement Officer.

Mr. Bentley replied by a letter that the IRS received on January 14, 2009, which stated:

> I am instructed by my client that the conference would be preferred to be held face-to-face at his home/business address, (the address to which you direct his correspondence) with me in attendance as well as the taxpayer, on 2/24/09 at 1530 hours, or at such later date that may be mutually convenient.
>
> The taxpayer requests that the Treasury Department extend reasonable accommodation to him under the ADA in meeting as indicated above, due to his disability which makes him essentially homebound. He suffers from, inter alia, acute COPD [chronic obstructive pulmonary disease], his only income is Social Security (due to his recent layoff[)], and his medical bills already amount to more than he can afford, to the extent they are over and above his Medicare benefits.
>
> His principal issue he wishes to discuss with you concerns the suspension of collection due to hardship because of the above factors.

Although Mr. Bentley never submitted to the IRS (or to the Court) substantiation of Mr. Pitts's medical condition, we assume for purposes of summary judgment that Mr. Pitts does suffer from COPD and that he is "essentially homebound". We also assume (as Mr. Bentley stated at the hearing held January 11, 2010) that Mr. Pitts lives in a fifth-floor walk-up apartment and that he is a "hoarder"--i.e., "[s]omeone who has tons and tons of paper and a variety of other things around that represent all of his possessions".

<u>Second attempt to schedule the CDP hearing</u>

When the Settlement Officer received Mr. Bentley's letter, she attempted to phone him and left him a voice mail message asking him to "compromise on a date and time" and offering to hold a face-to-face conference at 290 Broadway, which was the Office of Appeals location nearest to Mr. Pitts's home.

Mr. Bentley responded to the voice mail with a letter dated January 16, 2009, which stated:

> It would appear that my letter to you received in your office on January 14, 2009 has lacked clarity; it requests the Department of the Treasury to render reasonable accommodation to my client in having a face-to face conference at his home due to his disability which makes him substantially homebound.
>
> My letter also requests a date specific for that meeting as the date chosen by you, in the words of your letter, "is not convenient" either to my client nor to me, due to scheduling conflicts previously arranged, and we have offered you, in my letter, any date post 2/24/09 should that date be inconvenient.
>
> I have enclosed an edited version of my original letter with *emphasis* on those terms which constitute requests under the Americans with Disabilities Act for "reasonable accommodation" which your voice mail message appears to be refusing, and would ask you to clarify your position.

The Settlement Officer again left a voice mail message for Mr. Bentley, explaining that the Office of Appeals does not conduct CDP hearings at taxpayers' homes and that the CDP hearing could be held by correspondence or by telephone. She asked that Mr. Pitts choose the manner of hearing he would prefer and propose a date and time.

Decision to conduct the CDP hearing by correspondence

Mr. Bentley replied by a letter dated January 18, 2009:

    I write responsive to your voice mail message of
    January 16, 2009, which I found to be polite,
    informative and helpful.

    As a result of the information that you relayed in
    your message, it seems that the only effective course
    of action remaining to my client in view of his
    disability would be to seek "hardship" relief in the
    form of, initially, a temporary suspension of
    collection activity.

    Would you please be so kind as to inform me, or
    provide me by mail, what steps need be taken by the
    taxpayer to invoke this process?

    I must advise that as I will be involved in a
    series of medical procedures over the next weeks as
    treatment for recently diagnosed stage three kidney
    disease, I will be unable to telephone you as requested
    in your last voice mail message during normal business
    hours, but I will be able to proceed by correspondence,
    which choice is also selected and approved by my client
    for the balance of the Appeals process.  [Emphasis
    added.]

Second request for Form 433-A

On January 21, 2009, the Settlement Officer left a voice
mail message for Mr. Bentley, explaining that in order to seek
suspension of collection due to hardship, Mr. Pitts would need to
fill out the Form 433-A that had been enclosed with the
Settlement Officer's letter of December 30, 2008.  She asked that
the form be filled out and returned by January 29, 2009, so that
she could review the form and then discuss the case with
Mr. Bentley.

Mr. Bentley replied by a letter dated January 22, 2009, which stated:

> I write responsive to your voice mail message of January 21, 2009, which suggests that you have not read the correspondence I have sent you despite your having acknowledged its receipt.
>
> For your convenience, therefore, I have enclosed copies of my letters to you of January 13, 2009; January 16, 2009, and January 18, 2009 which state the position of my client.
>
> As to your reference to your letter of December 30, 2008, it, by its terms, excludes the necessity of the taxpayer providing a 433A form if the collection alternative sought is a hardship suspension of collection.
>
> To the extent the above was not your intended meaning in your letter, I would call your attention to Internal Revenue Service Release #IR-2009-2, Jan. 6, 2009 which states that "IRS assistors may be able to suspend collection without documentation to minimize burden [sic] on the taxpayer" and request that if you are not so empowered, kindly transfer this case to an "assistor" who is so authorized.
>
> We will otherwise respond to your December letter, as has been detailed to you in the enclosed prior received correspondence, for the reasons stated therein, not later than 2/24/09.

IRS News release IR-2009-02 (Jan. 6, 2009) attached to Mr. Bentley's letter included the following paragraph to which he referred:

> Postponement of Collection Actions: IRS employees will have greater authority to suspend collection actions in certain hardship cases where taxpayers are unable to pay. This includes instances when the taxpayer has recently lost a job, is relying solely on Social Security or welfare income or is facing devastating illness or significant medical bills. If an individual has recently encountered this type of financial

problem, IRS assistors may be able to suspend collection without documentation to minimize burden on the taxpayer.

Third request for Form 433-A

In response to Mr. Bentley's letter, the Settlement Officer sent him a "last chance" letter on January 29, 2009 (the date on which the CDP hearing had originally been scheduled). This letter is not in the record, but the Settlement Officer described it in detail in her work notes:

> SO composed last chance letter. Letter advised POA/TP [i.e., Mr. Bentley (the "power of attorney") and Mr. Pitts (the taxpayer)] that IR-2009-02 referring to postponement of collection actions, to suspend collection actions in certain hardship cases, does refer to the IRS to suspend collection without documentation. These guidelines would also depend upon the taxpayers situation. IR-2009-2 directs taxpayers who are behind on tax payments & needs assistan[ce] that when contacting IRS, there could be additional help available for taxpayers facing unus[u]al hardship situations. That to suspend collection actions if the individual has recently encountered financial problems. IRS manual indicates only partial financial analysis is required prior to reporting an account as Cu[r]rently Not Collectible (CNC) if the aggregate assessed balance, including prior CNC accounts, is less than $5,000. Balances above that amount require[] a full financial analysis and the Collection Information Statement with documentation is required. The taxpayer balance is $67,772.30. Please keep in mind this does not stop penalties and interest from accruing as long as the assessed balance is still outstanding. As the taxpayer did not file a tax return for 2005 and 2006 additional documentation is required. Taxpayer's CDP request was signed November 15, 2008. Appeals Contact Letter [was] dated December 30, 2008 and allow[ed] the taxpayer sufficient time to prepare for the conference on January 29, 2009. Though the taxpayer is 'essentially homebound' a conference could not be extended to date requested, February 24, 2009. Last

chance composed and sent.  F/U [follow-up] = 14 days = 02-12-2009 [i.e., February 12, 2009].

This "last chance" letter thus gave Mr. Pitts until February 12, 2009, to submit the requested information.  This date was between the date that the Settlement Officer had initially scheduled for the CDP hearing (January 29, 2009) and the alternative date that Mr. Bentley had proposed (February 24, 2009).

Issuance of the notice of determination

Petitioner does not dispute the fact that the "last chance" letter was sent or the content of the letter.  However, Mr. Bentley made no response to the letter on behalf of Mr. Pitts.  Consequently, on February 25, 2009, the Office of Appeals issued to Mr. Pitts a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330."  The notice of determination sustained the filing of the notice of lien.  An attachment to the notice stated that "the liabilities were not discharged in the taxpayer's bankruptcy" and that "no collection alternatives were available to the taxpayer as documentation was not supplied."

Tax Court proceedings

Mr. Bentley timely filed a petition in this Court on behalf of Mr. Pitts, appealing the notice of determination.  The petition asserts that the Office of Appeals abused its discretion in declining to suspend collection activity, and it asserts three specific errors:

(1) Respondent violated the ADA Amendments Act of 2008 [amending the Americans with Disabilities Act, 42 U.S.C. chapter 126]

(2) Respondent violated Title 5 CFR § 1320.6 [implementing the Paperwork Reduction Act of 1995, 44 U.S.C. chapter 35]

(3) Respondent declined to recognize underlying liability included components discharged in bankruptcy

Petitioner moved for summary judgment on November 9, 2009; respondent cross-moved on December 7, 2009; and the motions were argued at a hearing on January 11, 2010.

## Discussion

### I.    Applicable legal principles

#### A.    Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial.  Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b).  The party moving for summary judgment bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

In his opposition to respondent's motion, Mr. Pitts asserts that "cross-examination of respondent is required to understand

the reason for the blatant date alteration in respondent's log introduced in support of his motion for summary judgment." He apparently refers to respondent's Exhibit L, "Case Activity Record Print", which reflects entries that the Settlement Officer made to record her work on the case, including her contacts with Mr. Pitts's representative, Mr. Bentley. To the extent that respondent's assertion of a material fact in the case is based on an entry in that record, if petitioner raises a genuine issue as to that fact, then summary judgment would be precluded. However, Rule 121(d) provides:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party [such as Mr. Pitts] may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. * * *

In compliance with Rule 121(b), respondent made and supported a showing of the authenticity of the Case Activity Record Print and of the facts of the case; but Mr. Pitts's only response is his unelaborated assertion about "blatant date alteration". Most of the dates in the chronology set out above are corroborated in petitioner's submissions, and he does not specify which dates were altered, nor how the alterations would affect the outcome of the case. We therefore hold that respondent's factual assertions are not controverted.

In ruling on respondent's motion, we draw all inferences in favor of Mr. Pitts, and we find that there is no genuine issue as to any material fact and respondent is entitled to judgment as a matter of law.

### B. Collection review procedure

#### 1. In general

When a taxpayer fails to pay any Federal income tax liability after demand, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323 authorizes the IRS to file notice of that lien. However, within five business days after filing a notice of tax lien, the IRS must provide written notice of that filing to the taxpayer. Sec. 6320(a). After receiving such a notice, the taxpayer may request an administrative hearing before the Office of Appeals. Sec. 6320(a)(3)(B), (b)(1). Administrative review is carried out by way of a hearing before the Office of Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Pitts has done.

#### 2. Agency-level review in lien cases

In the case of a notice of lien, section 6320(c) provides that the procedures for the agency-level CDP hearing before the Office of Appeals are set forth in section 6330(c):

First, the appeals officer must "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1).[4] The notice of determination set forth the IRS's compliance with these requirements, and Mr. Pitts made no challenge as to verification in his petition (or in his motion), so no verification issues under section 6330(c)(1) are at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed [lien or] levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Mr. Pitts's contentions pertain to collection alternatives, which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Mr. Pitts did receive a notice of deficiency and did have prior opportunities to challenge the underlying liabilities for 1991, 1992, and 1993 when he not only litigated them in his prior case

---

[4]In the case of the lien filed against Mr. Pitts, the basic requirements, see sec. 6320, for which the appeals officer was to obtain verification are: assessment of the liability, secs. 6201(a)(1), 6501(a); notice and demand for payment of the liability, sec. 6303; and notice of the filing of the lien and of the taxpayer's right to a CDP hearing, secs. 6320(a) and (b).

(docket No. 3187-00)--in which his liabilities were determined by stipulated decision--but also attempted to challenge them in his bankruptcy case.[5]  He cannot now make a third challenge to that determination in this CDP case.  Mr. Pitts previously contended (in the CDP hearing and in his petition in this case) that the liabilities were subsequently discharged in bankruptcy; but he did not assert this contention in his motion, in his opposition to respondent's motion,[6] or at the hearing; and we find that he has abandoned this bankruptcy discharge contention.

Finally, the appeals officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).  The notice of determination found "that the filing of the NFTL [notice of Federal tax lien] balances the need for efficient collection of taxpayer's accounts with taxpayer's

---

[5]See Kendricks v. Commissioner, 124 T.C. 69, 77 (2005) (the taxpayer had the opportunity to dispute the liability within the meaning of section 6330(c)(2)(B) when the IRS submitted a proof of claim for an unpaid tax liability in taxpayer's bankruptcy action).

[6]Respondent's motion asserted that the Office of Appeals "determined that Petitioner's bankruptcy filing did not discharge his tax liabilities for the years at issue because Petitioner's objection to the IRS's proof of claim was overruled and the IRS's proof of claim was allowed in full by the Bankruptcy Court" and that the Office of Appeals did not abuse its discretion "in determining that Petitioner's bankruptcy did not discharge the unpaid tax liabilities".

legitimate concerns that the collection action be no more intrusive than necessary."  Mr. Pitts made no contention of any defect in the balancing conducted by the Office of Appeals in this case.

### 3.  Tax Court review

When the Office of Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Pitts has done.  In such an appeal (where the underlying liability is not at issue), we review the determination of the Office of Appeals for abuse of discretion.  That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

## II.  Respondent's entitlement to summary judgment

### A.  Mr. Pitts's failure to produce financial information

The Office of Appeals determined not to grant Mr. Pitts's request to suspend collection activity against him on the ground of financial hardship, and we review that determination for an abuse of discretion.  Suspension of collection activity is, in CDP parlance, a "collection alternative" that the taxpayer may propose, see sec. 6330(c)(2)(A)(iii), and that the Office of Appeals must "take into consideration", sec. 6330(c)(3)(B).  The Internal Revenue Manual (IRM) makes provision for a taxpayer's

account to be declared "currently not collectible" (CNC) in cases of "hardship".  See IRM pts. 1.2.14.1.14 (Nov. 19, 1980) (Policy Statement 5-71), 5.16.1.2.9 (May 5, 2009).

However, the regulations state that "[t]axpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."  26 C.F.R. Sec. 301.6320-1(e)(1), Proced. & Admin. Regs.  It could hardly be otherwise.  For a taxpayer to justify suspension of collection on the ground that the account should be deemed "currently not collectible"--i.e., that he cannot afford to pay the liability-- he must of course show that he cannot afford to pay the liability.  To do so, he must show his financial circumstances-- i.e., the money that is available to him and the expenses that he bears.[7]  Form 433-A is the means by which the IRS obtains this financial information from the taxpayer--but Mr. Pitts failed to submit this information despite three requests for it (on December 30, 2008, January 21, 2009, and January 29, 2009).  In the absence of that information, the Office of Appeals did not

---

[7]See Vinatieri v. Commissioner, 133 T.C. ___, ___ n.7 (2009) (slip op. at 15) ("In Estate of Atkinson v. Commissioner, T.C. Memo. 2007-89, we found reasonable [the] requirement[] that an entity seeking collection alternatives to full payment, including reporting an account as currently not collectible, * * * submit[] a full financial statement").

abuse its discretion in declining to put Mr. Pitts's account into CNC status.

In his correspondence with Appeals, Mr. Bentley resisted the IRS's request that Mr. Pitts complete Form 433-A by citing the recent IRS News release IR-2009-02, supra.  Although he did not cite that release or make the same contention in his petition or his motion papers, we note that the contention was not well grounded.  Mr. Bentley seemed to read the news release as creating an immunity from the obligation to produce financial information.  In fact, the release stated that "IRS assistors may be able to suspend collection without documentation".  (Emphasis added.)  And as the Settlement Officer explained to Mr. Bentley, the IRM makes provision for suspension of collection after "only partial financial analysis" where the liability is less than $5,000.[8]  Mr. Pitts's unpaid liability was more than ten times that amount.

Before his accounts could be treated as CNC, Mr. Pitts was obliged to show his financial situation, and he failed to submit

---

[8]See IRM pt. 5.16.1.2.9(3) ("Under certain conditions, a CIS [Collection Information Statement] is not required before reporting an account CNC.  The aggregate unpaid balance of assessments, including any prior CNC's, must be less than the amount in LEM 5.16.1.2.9(3)").  The LEM (law enforcement manual) is a portion of the IRM that is not made available to the public. See Roberts v. IRS, 584 F. Supp. 1241 (E.D. Mich. 1984).

Form 433-A to make that showing.[9]  The Office of Appeals did not abuse its discretion by requiring the submission of Form 433-A or by denying CNC status in its absence.

B.    Mr. Pitts's contentions

Mr. Pitts asserts two errors[10] by the Office of Appeals that, he argues, constituted abuses of its discretion, and we address them separately here.

1.    Denial of a face-to-face hearing at Mr. Pitts's home

Mr. Pitts argues that because he is disabled as a result of COPD, the Americans with Disabilities Act (ADA), 42 U.S.C. chapter 126 (2006), required the Settlement Officer to make reasonable accommodation for his disability by conducting a face-to-face CDP hearing in his home.  This contention fails for multiple reasons.

---

[9]The Form 433-A seeks not only information about a taxpayer's current income and expenses but also details of his assets.  Although Mr. Pitts represented that his only source of income was Social Security benefits and alleged that he had substantial medical expenses, he substantiated neither claim; and, on the record before us, he made no representations whatever about the presence or value of any assets--the other information required by Form 433-A, which is necessary for evaluating his ability to pay.

[10]In his motion for summary judgment, Mr. Pitts asserts the Paperwork Reduction Act (PRA) argument addressed here in part II.B.2, and in his opposition to respondent's cross-motion he asserted the PRA argument and the Americans with Disabilities Act argument addressed here in part II.B.1.  As we noted above in part I.B.2, Mr. Pitts abandoned his contention that the liabilities were discharged in bankruptcy.

First, Mr. Pitts chose to have his CDP hearing by correspondence.  After the Settlement Officer explained to Mr. Bentley that the CDP hearing could be held by correspondence or by telephone, Mr. Bentley stated in his letter of January 18, 2009, "I will be able to proceed by correspondence, which choice is also selected and, approved by my client for the balance of the Appeals process."  Having not objected to a non-face-to-face hearing, and having rather chosen to have the hearing by correspondence, Mr. Pitts cannot contend that the Office of Appeals abused its discretion by proceeding on that basis.

Second, the statute does not require a face-to-face hearing. Section 6320(b)(1) provides that a "hearing shall be held" by the Office of Appeals.  The statute does not describe the nature of that hearing.  As we have previously observed,

> Hearings at the Appeals level have historically been conducted in an informal setting.  * * *
>
> When Congress enacted section 6330 * * *, Congress was fully aware of the existing nature and function of Appeals.  Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of an Appeals hearing * * *.

Davis v. Commissioner, 115 T.C. 35, 41 (2000).  Thus, the regulations implementing the CDP process provide that a "CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's

representative, or some combination thereof." 26 C.F.R. sec.
301.6320-1(d)(2), A-D6, Proced. & Admin. Regs.

Third, a face-to-face hearing could not have been held in
Mr. Pitts's home. If a face-to-face CDP hearing was to be held,
the applicable regulations direct that such hearing take place
"at the Appeals office closest to the taxpayer's residence."
26 C.F.R. sec. 301.6320-1(d)(2), A-D7, Proced. & Admin. Regs.
Considerations of efficiency, taxpayer relations, and the safety
of IRS personnel surely entered into the formulation of that
policy. If there is a circumstance in which we would second-
guess the Office of Appeals in its adherence to that policy, it
is not present in this case.

Fourth, the ADA does not apply to the Federal Government.
The relevant portion of the act would be subtitle II, "Public
Services", but the definition therein of a "public entity" to
which the statute applies does not include the Federal
Government. See 42 U.S.C. secs. 12131(1), 12132; Agee v. United
States, 72 Fed. Cl. 284, 289 (2006); Smith v. U.S. Court of
Appeals, No. C-08-1860 EMC, WL 2079189, *4 (N.D. Cal., May 15,
2008) (order dismissing complaint and granting application to
proceed in forma pauperis); Wilks v. FAA, No. C06-940P,
WL 1687765, *6 (W.D. Wash., June 8, 2007) (order of dismissal).
But if a taxpayer's disability did impede his participation in a
CDP hearing, we assume arguendo that, notwithstanding the

inapplicability of the ADA, the Office of Appeals would abuse its discretion if it refused to make reasonable accommodations to facilitate his participation.  In this case, however, Appeals did accommodate Mr. Pitts by its practice of allowing a hearing to be held by telephone or by correspondence.[11]  Particularly in the case of a taxpayer who has counsel, as Mr. Pitts has, the conducting of the hearing by telephone or correspondence yields no apparent prejudice to the taxpayer.  The IRS has developed routines for obtaining information in a manner that is susceptible of being recorded, evaluated, and reviewed.  The Settlement Officer was not obliged instead to make a field trip to Mr. Pitts's apartment to learn his financial situation; she was entitled rather to require Form 433-A, and Mr. Pitts has made no showing that this method for evaluating his financial situation imposed any particular hardship on him.

2.   Paperwork Reduction Act

Mr. Pitts's principal contention in this case is based on the Paperwork Reduction Act (PRA), 44 U.S.C. chapter 35 (2006). Section 3512(a) of Title 44 of the United States Code provides:

> Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if--

---

[11]Cf. In re Winston, No. 07-20593-D-13L, 2007 WL 1394161 (Bankr. E.D. Cal., May 11, 2007) (memorandum decision indicating that allowing a disabled debtor to participate by telephone in bankruptcy proceedings constitutes a reasonable accommodation).

(1)   the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or

(2)   the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number. [Emphasis added.]

In the income tax context, this provision of the PRA is most often cited against the income tax return itself--an argument that is thoroughly discredited--so that most of the caselaw addressing the argument (and finding it frivolous) affirms that the taxpayer's obligation to file a return is not abrogated by supposed violations of the PRA.[12]  Mr. Pitts addresses not the tax return but Form 433-A, and he argues that the PRA applies to (and invalidates) its use during the CDP hearing to obtain the financial statement of the taxpayer.  He argues that since the request for a financial statement on Form 433-A is "a collection of information", the PRA applies; but that since Form 433-A

---

[12]See, e.g., Wheeler v. Commissioner, 127 T.C. 200 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).  Some of the opinions holding the PRA inapplicable to tax returns are cited in Revenue Ruling 2006-21, 2006-1 C.B. 745.  With regard to tax returns we have rebuffed the argument as recently as in Turner v. Commissioner, T.C. Memo. 2010-44.  In Moore v. Commissioner, T.C. Memo. 2007-200, affd. 296 Fed. Appx. 821 (11th Cir. 2008), when the taxpayer requested during the CDP hearing "that Settlement Officer Feist 'provide evidence verifying the U.S. Individual Income Tax/Forms 1040 and Form 433-A in question are in compliance with the specifications of the PAPERWORK REDUCTION ACT (PRA) and have been issued current and valid control numbers from the Office of Management and Budget'" (emphasis added), we characterized the issue as "frivolous".

displays no "control number", the form is invalid and taxpayers need not comply with requests to fill it out and submit it.

Mr. Pitts's argument fails to note the effect of 44 U.S.C. section 3518(c)(1)(B)(ii):[13]

> (c)(1)    Except as provided in paragraph (2), this subchapter shall not apply to the collection of information-- * * *
>
>     (B)  during the conduct of-- * * *
>
>         (ii) an administrative action or investigation involving an agency against specific individuals or entities * * *.  [Emphasis added.]

---

[13]The regulations promulgated under this statute are to the same effect.  5 C.F.R. section 1320.4 (2010) provides (with emphasis added):

> (a)  The requirements of this Part apply to all agencies as defined in § 1320.3(a) and to all collections of information conducted or sponsored by those agencies, as defined in § 1320.3 (c) and (d), wherever conducted or sponsored, but, except as provided in paragraph (b) of this section, shall not apply to collections of information:
>
>     *     *     *     *     *     *     *
>
> (2) during the conduct of a civil action to which the United States or any official or agency thereof is a party, or during the conduct of an administrative action, investigation, or audit involving an agency against specific individuals or entities;
>
>     *     *     *     *     *     *     *
>
> (c)  The exception in paragraph (a)(2) of this section applies during the entire course of the investigation, audit, or action, whether before or after formal charges or complaints are filed or formal administrative action is initiated, but only after a case file or equivalent is opened with respect to a particular party. * * *

Section 3518(c)(1) thus excludes administrative hearings--such as CDP hearings that evaluate the propriety of a specific collection action against a specific taxpayer--from the reach of the PRA. Consistent with that exclusion, 44 U.S.C. section 3518(c)(2) describes the "general investigations" that are included within the reach of the PRA, and CDP hearings are not in that description:

> (2)  This subchapter applies to the collection of information during the conduct of general investigations (other than information collected in an antitrust investigation to the extent provided in subparagraph (C) of paragraph (1)) undertaken with reference to a category of individuals or entities such as a class of licensees or an entire industry.  [Emphasis added.]

Petitioner argues, however, that the PRA does reach CDP hearings because the set of taxpayers who request CDP hearings constitute (in the words of section 3518(c)(2)) a "category of individuals" (emphasis added) who generally are asked to submit Form 433-A. This interpretation is unwarranted.

The question under 44 U.S.C. section 3518(c)(2) is not whether many individual taxpayers have CDP hearings (they do), nor whether Form 433-A is used widely (it is), but whether a given CDP hearing is a "general investigation"--and it is not. Rather, a CDP hearing is "an administrative action, investigation, or audit involving an agency [the IRS] against [a] specific individual[]"--in this case, Mr. Pitts.  Just as an IRS audit of a specific individual taxpayer is not a general

investigation,[14] so a CDP hearing is an administrative action involving a specific individual and is not a general investigation. For that reason, the collection of information during a CDP hearing is not subject to the PRA. The lack of a control number on Form 433-A did not relieve Mr. Pitts from the obligation to submit the form and does not relieve him of the consequences of his failure to do so. When the Office of Appeals did not receive financial information from Mr. Pitts, it was entitled to deny his request to suspend collection of his long-unpaid income tax liabilities for 1991, 1992, and 1993.

### Conclusion

On the undisputed facts of this case, it is clear that the Office of Appeals did not abuse its discretion when it denied "currently not collectible" status to Mr. Pitts's liabilities and upheld the filing of a notice of lien. We hold that, as a matter of law, respondent is entitled to the entry of a decision sustaining the determination.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[14]See <u>Lonsdale v. United States</u>, 919 F.2d 1440, 1445 (10th Cir. 1990) (and cases cited thereat) (the PRA is "inapplicable to 'information collection request' forms issued during an investigation against an individual to determine his or her tax liability" (citing 44 U.S.C. sec. 3518(c)(1)(B)(ii)).