154 T.C. No. 5

UNITED STATES TAX COURT

DAVID J. CHADWICK, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17049-18L.               Filed January 21, 2020.

P was the sole member of LLC1 and LLC2, each of which failed to pay employment taxes with respect to its employees' wages. Different revenue officers (ROs) were assigned to investigate these matters. The ROs concluded that P was a "responsible person" of each LLC and was thus required to collect and pay over its employment taxes. <u>See</u> I.R.C. sec. 6672(a).

Each RO completed a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, recommending that trust fund recovery penalties (TFRPs) be assessed against P. Each RO's supervisor approved the recommendation in writing on the Form 4183. On the same days as the Forms 4183 were signed, R issued Letters 1153, Trust Fund Recovery Penalty Letter, notifying P of R's determinations to assess TFRPs and offering P the opportunity to appeal those determinations. P did not appeal, and R assessed the TFRPs.

R mailed a levy notice in an effort to collect P's unpaid TFRP liabilities, and P timely requested a collection due process hearing.

At the hearing P's representative requested that P's account be placed into currently not collectible (CNC) status. The settlement officer informed P's representative that, in order for P's account to be considered for CNC status, P would need to file delinquent tax returns and submit pertinent financial information. P did not submit delinquent tax returns and or any financial information. R issued a notice of determination sustaining the levy, and P timely petitioned this Court.

     1. Held: A TFRP is a "penalty" within the meaning of I.R.C. sec. 6751(b)(1). It is thus subject to the requirement that written supervisory approval be secured for the "initial determination of such assessment."

     2. Held, further, the "initial determination" of each penalty assessment was embodied in the Letter 1153 formally communicating R's definite decision to assert TFRPs against P.

     3. Held, further, the IRS satisfied the requirements of I.R.C. sec. 6751(b)(1) because written supervisory approval of the TFRPs was secured on each Form 4183 on the same date the respective Letter 1153 was mailed to P.

     4. Held, further, the SO did not abuse his discretion in declining to place P's account into CNC status.

David J. Chadwick, pro se.

Halvor R. Melom and Michael W. Tan, for respondent.

OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy.  Respondent has moved for summary judgment, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law.  We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and respondent's motion papers, including the attached declarations and exhibits.  See Rule 121(b).  Petitioner resided in California when he petitioned this Court.

Petitioner was the sole member of Integrated Communications Network, LLC (ICN), and Netcast BPO Staffing, LLC (Netcast).  Both companies failed to pay employment taxes for several calender quarters.  Revenue Officer (RO)

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

Capone was assigned to investigate the employment tax delinquencies of ICN, and RO Fountain was assigned to investigate those of Netcast.

RO Capone conducted a telephone interview with petitioner and learned that he was responsible for hiring staff, setting pay rates, and signing payroll checks. RO Capone accordingly determined that petitioner was a "responsible person" required to "collect, truthfully account for, and pay over" ICN's employment taxes. See sec. 6672(a). On March 8, 2016, RO Capone completed a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, recommending assertion of trust fund recovery penalties (TFRPs) against petitioner for the final two calendar quarters of 2014. The Form 4183 shows that RO Capone's supervisor, Group Manager Mahan, electronically signed the form approving this recommendation.

That same day the IRS sent petitioner at his last known address via certified mail a Letter 1153, Trust Fund Recovery Penalty Letter. This letter explained that the IRS proposed to assess TFRPs against him for the two calendar quarters in question and informed him of his right to appeal this determination. Petitioner did not appeal, and the IRS assessed the TFRPs on June 20, 2016.

RO Fountain ascertained that petitioner was the sole member of Netcast and that his signature appeared on the employment tax payments that the IRS had pre-

viously received from Netcast. RO Fountain accordingly determined that petitioner was a "responsible person" of Netcast. On April 8, 2016, RO Fountain completed a Form 4183 recommending assertion of TFRPs against petitioner for the first three calendar quarters of 2015. The Form 4183 shows that RO Fountain's supervisor, Group Manager Cobos, electronically signed the form approving this recommendation.

That same day the IRS sent petitioner at his last known address via certified mail a Letter 1153. This letter explained that the IRS proposed to assess TFRPs against him for the three calendar quarters in question and informed him of his right to appeal this determination. Petitioner did not appeal, and the IRS assessed the TFRPs on August 8, 2016.

As of November 2017 petitioner's assessed but unpaid TFRP liabilities for the five quarters totaled $113,783. On November 30, 2017, in an effort to collect these liabilities, the IRS mailed petitioner a Notice of Intent to Levy and Notice of Your Right to a Hearing. He timely requested a CDP hearing, checking the box "I Cannot Pay Balance." In an attached letter he asked that the IRS consider "all collection alternatives including, but not limited to, offer in compromise, installment agreement or currently not collectible status." Petitioner did not indicate an intention to challenge his underlying liability for any calendar quarter.

The case was assigned to a settlement officer (SO) in the IRS Appeals Office in Riverside, California. After reviewing IRS records the SO ascertained that petitioner had not filed personal income tax returns for 2015-2017. The SO sent petitioner a letter scheduling an in-person CDP hearing for May 8, 2018, and informing him that, in order for the SO to consider collection alternatives, petitioner needed to provide: (1) a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; (2) a completed Form 433-B, Collection Information Statement for Businesses; (3) signed Forms 1040, U.S. Individual Income Tax Return, for taxable years 2015-2017; (4) proof that estimated tax payments had been made for 2018; (5) proof of timely deposit of Federal employment taxes for the current quarter; and (6) supporting financial information. The SO asked that petitioner submit these documents before the hearing.

On May 4, 2018, the SO reviewed the administrative file and verified that the TFRPs at issue had been properly assessed, that notice and demand for payment had been mailed to petitioner at his last known address, and that there existed an employment tax balance due for each of the five quarters. Petitioner submitted no tax returns and no financial information before the hearing.

At the request of petitioner's representative a telephone conference was held in lieu of an in-person conference. His representative urged that petitioner had no TFRP liability for certain calendar quarters because he had resigned from his position at Netcast. His representative acknowledged that petitioner had received the Letter 1153 covering those quarters but had failed to appeal. The administrative file indicated that petitioner had also received the other Letter 1153, covering ICN's tax delinquencies, which had been signed for by his wife. The SO explained that, because petitioner had declined to take advantage of prior opportunities to dispute his underlying tax liabilities, he could not challenge them during the CDP hearing.

Petitioner's representative requested that petitioner's account be put into currently not collectible (CNC) status. The SO replied that, in order for him to evaluate whether CNC status was justified, petitioner needed to provide the requested forms and financial information, as well as delinquent income tax returns for 2015-2017. Petitioner's representative requested 30 days to supply these documents, and the SO granted that request.

Petitioner submitted no tax returns and no financial information by the June 7, 2018, deadline. On July 25, 2018, having received no further communication from petitioner or his representative, the SO issued a notice of determina-

tion sustaining the levy. Petitioner timely petitioned this Court for review, stating that the levy would render him unable to pay basic living expenses and that he was "ready to have other collection alternatives considered, such as installment agreement, uncollectible status or offer in compromise."

On September 18, 2019, respondent filed a motion for summary judgment. We directed petitioner to file a response to the motion by October 21, 2019, warning him that, "under Rule 121(d), judgment may be entered against a party who fails to respond to a motion for summary judgment." He filed no response.

## Discussion

### I. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set

forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Because petitioner did not respond to the motion for summary judgment, we could enter decision against him for that reason alone. See Rule 121(d). We will nevertheless consider the motion on its merits. We conclude that no material facts are in genuine dispute and that this case is appropriate for summary adjudication.

II.     Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the taxpayer has properly challenged his underlying tax liability at the CDP hearing, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying tax liability is not properly before us, we review the IRS' determination for abuse of discretion. Id. at 182.

A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. Sec. 6330(c)(2)(B). A taxpayer has the opportunity to dispute his liability for a TFRP by filing an appeal with the IRS when he receives a Letter 1153. See

Mason v. Commissioner, 132 T.C. 301, 317-318 (2009); Lewis v. Commissioner, 128 T.C. 48, 61 (2007); Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472; sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

The IRS sent petitioner two Letters 1153, and the administrative record shows that he received both of them. Because he had an opportunity to dispute his TFRP liabilities upon receipt of these letters but declined to do so, he was not entitled to challenge his underlying tax liabilities at the CDP hearing and may not advance such a challenge in this Court. Accordingly, we review the SO's actions for abuse of discretion only.

III.    Abuse of Discretion

In deciding whether the SO abused his discretion in sustaining the proposed levy, we consider whether he: (1) properly verified that the requirements of any applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of his responsibilities under section 6330(c).

A.      Penalty Approval

      1.      TFRPs as "Penalties"

One requirement of applicable law or administrative procedure that may be relevant in a CDP case is that imposed by section 6751(b)(1).  It provides:  "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."  Sec. 6751(b)(1).  Respondent contends that the "approval requirements of I.R.C. § 6751(b)(1) do not apply to the TFRP[s] because I.R.C. § 6672, in substance, imposes a tax rather than a penalty."  We have not previously resolved this question.  See Blackburn v. Commissioner, 150 T.C. 218, 219-220 (2018).

"We begin our inquiry, as we must, by considering the plain and ordinary meaning of the text Congress enacted."  Klein v. Commissioner, 149 T.C. 341, 351 (2017) (citing Jimenez v. Quarterman, 555 U.S. 113, 118 (2009)).  Section 6751(b)(1) provides that "[n]o penalty under this title"--that is, no penalty under the Code--"shall be assessed unless the initial determination of such assessment" receives the requisite supervisory approval.  Section 6672(a), which authorizes the assessment of TFRPs, provides that a responsible person who fails to collect or pay over any tax "shall, in addition to other penalties provided by law, be liable to

a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." The plain text of section 6672(a) indicates that a TFRP is a "penalty" under the Code.[2]

Congress placed section 6672 in subtitle F, chapter 68, subchapter B of the Code. Subchapter B is captioned "Assessable Penalties." Comprising sections 6671 through 6725, subchapter B includes more than 50 penalties for such infractions as failing to file information returns, failing to make certain disclosures, aiding and abetting the understatement of tax, promoting abusive tax shelters, and making frivolous tax submissions. These penalties are called "assessable penalties" because the IRS may assess them without regard to deficiency procedures. See Smith v. Commissioner, 133 T.C. 424, 428-429 (2009); see also Shaw v. United States, 331 F.2d 493, 494-495 (9th Cir. 1964). As we have noted previously, section 6751(b)(1) "[b]y its terms * * * applies to assessment of all penalties under 'this title'" and it thus "encompasses not only penalties subject to deficiency procedures but a great many so-called assessable penalties in subch[apter] B of ch[apter] 68." Graev v. Commissioner, 149 T.C. 485, 495 n.17

---

[2]Section 6672 was in place in 1998 when Congress enacted section 6751, and Congress is presumed to have known that section 6672 refers to the liability it creates as a "penalty." See Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

(2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016); <u>see also</u> <u>Laidlaw's Harley Davidson Sales, Inc. v. Commissioner</u>, 154 T.C. __, __ (slip op. at 18-19) (Jan. 16, 2020) (discussing the application of section 6751(b) to assessable penalties under sections 6699, 6701, 6702, and 6707A).

The overall structure of chapter 68 points to the same conclusion. Subchapter A, comprising sections 6651 through 6665, covers additions to tax, additional amounts, accuracy-related penalties, and fraud penalties. Subchapter B covers assessable penalties. Subchapter C, consisting solely of section 6751, sets forth "Procedural Requirements" applicable to all of the foregoing items.

Section 6751(a) requires the IRS to provide taxpayers with specified information in "each notice of penalty under this title," with "penalty" defined for this purpose to include "any addition to tax or any additional amount." <u>See</u> sec. 6751(c). Section 6751(b)(1) requires the IRS to secure supervisory approval for any "penalty under this title," with "penalty" defined for this purpose to exclude certain "addition[s] to tax" and "any other penalty automatically calculated through electronic means." <u>See</u> sec. 6751(b)(2). Section 6751, in short, sets forth comprehensive procedural requirements for all of the penalties and other items included in subchapters A and B. It would be anomalous, in the absence of any

textual justification, to exempt section 6672 penalties from the scope of those rules.

Respondent directs our attention to United States v. Rozbruch, 28 F. Supp. 3d 256 (S.D.N.Y. 2014), aff'd on other grounds, 621 F. App'x 77 (2d Cir. 2015). The District Court there held that section 6751(b) does not apply to TFRPs.[3]  It reasoned that a TFRP, while denominated a penalty, is in essence a tax liability because section 6672 operates to shift liability for unpaid taxes from the employer to the responsible person.  See Rozbruch, 28 F. Supp. 3d at 264-265 (citing Kelly v. Lethert, 362 F.2d 629, 633 (8th Cir. 1966) (stating that a TFRP "is, in substance, a tax"); United States v. Becker, No. 86 Civ. 3946 (JFK), 1989 WL 34048, at *4 (S.D.N.Y Apr. 4, 1989) (referring to section 6672 assessments as "taxes"); and Turchon v. United States, 77 B.R. 398, 400 (E.D.N.Y. 1987) (stating that a TFRP "is in fact a tax"), aff'd without published opinion, 841 F.2d 1116 (2d Cir. 1988)).  As further support for this conclusion the District Court cited section 6671, captioned "Rules for Application of Assessable Penalties."  Section 6671(a) provides

---

[3]The U.S. Court of Appeals for the Second Circuit, when affirming the District Court in Rozbruch, specifically declined to adopt the holding that TFRPs are not "penalties" for purposes of section 6751(b)(1).  See United States v. Rozbruch, 621 F. App'x 77, 78 (2d Cir. 2015) ("[E]ven assuming, without deciding, that TFRPs are governed by Section 6751(b)(1), the record here nevertheless supports a finding that the Government functionally satisfied * * * [the] written supervisory approval requirement."), aff'g 28 F. Supp. 3d 256 (S.D.N.Y. 2014).

that "[t]he penalties and liabilities provided by * * * [subchapter B] shall be assessed and collected in the same manner as taxes."

With all due respect, we are not persuaded by the District Court's analysis. The cases it cites provide a reasonable characterization of how section 6672 operates as between the employer and its responsible persons. As a matter of policy, the IRS collects an employment tax liability only once, either from the employer directly or from its responsible persons. See United States v. Sotelo, 436 U.S. 268, 279 n.12 (1978); Dixon v. Commissioner, 141 T.C. 173, 192-193 (2013). Because the IRS never collects more than 100% of the tax, a TFRP in a practical sense may be viewed as shifting the employer's unpaid tax liability to any responsible persons who incur liability under section 6672.

But this does not mean that TFRPs are not "penalties." A responsible person incurs liability under section 6672(a) only if he "willfully fails" to discharge his Federal tax obligations on behalf of the employer. Like penalties for failure to file returns and failure to disclose information, TFRPs are imposed as a sanction for failing to do something. From the standpoint of the person sanctioned, they are "penalties" both as denominated by the Code and in the ordinary sense of the word.

We likewise find no support in section 6671 for the view that TFRPs are not "penalties." Section 6671(a), which sets forth "Rules for Application of Assessable Penalties," provides that penalties under subchapter B "shall be assessed and collected in the same manner as taxes." Section 6665(a)(1) similarly provides that accuracy-related penalties, fraud penalties, and other amounts imposed under subchapter A "shall be assessed, collected, and paid in the same manner as taxes." These sections do not characterize "penalties" as something other than penalties. Rather, they simply specify the manner in which such penalties are to be assessed and collected. Cf. Klein, 149 T.C. at 352 (holding that criminal restitution, which is assessed and collected under section 6201(a)(4) "in the same manner as if such amount were such tax," is not "a tax" imposed by the Code).

Virtually all penalties under the Code are assessed and collected "in the same manner as taxes." If that characteristic were sufficient to render them "non-penalties" for purposes of section 6751(b), section 6751(b) would not apply to anything, contrary to Congress' obvious purpose in enacting that statute. We reject a construction of section 6751(b) that would have Congress passing "a useless and vain act." United States v. Chase, 135 U.S. 255, 262 (1890).

None of the cases the District Court cited in Rozbruch considered how TFRPs should be characterized for purposes of other Code provisions that refer to

"penalties." Indeed, all of the cited cases were decided before 1998, when section 6751 was enacted. That provision created new procedural rules that Congress made applicable to all "penalties" contained in subchapters A and B. Section 6672 is contained in subchapter B, and it explicitly denominates TFRPs as "penalties." We find no textual or other justification for exempting section 6672 penalties from the scope of section 6571.

### 2. Timeliness of Penalty Approval

Having decided that TFRPs are "penalties" within the meaning of section 6751(b)(1), we must decide whether approval for those penalties was timely secured. The statute requires that written supervisory approval be obtained for the "initial determination of such assessment." Ibid. In Belair Woods, LLC v. Commissioner, 154 T.C. 1, __ (slip op. at 23) (Jan. 6, 2020), we held that the initial determination of the penalty assessment was embodied in the letter "by which the IRS formally notified * * * [the taxpayer] that the Examination Division had completed its work and * * * had made a definite decision to assert penalties."

In the instant case, the initial determination of each penalty assessment was embodied in the Letters 1153 that the IRS mailed to petitioner. The Letters 1153 were the documents in which the IRS first formally communicated to petitioner its definite decision to assert the TFRPs. For each Letter 1153 the RO completed, on

the same day that letter was mailed to petitioner, a Form 4183 recommending assertion of TFRPs for the calendar quarters at issue.

The Internal Revenue Manual (IRM) requires that supervisory approval of TFRPs always precede issuance of the Letter 1153. See IRM pts. 5.7.4.6, 5.7.4.7 (Nov. 12, 2015). The record establishes that such approval was timely secured here. The Forms 4183 show that the supervisor of each RO approved the recommendation by affixing an electronic signature. Section 6751(b)(1) does not require that approval be indicated by an actual signature; the Form 4183 need only supply written evidence that the TFRPs received timely supervisory approval. See Blackburn, 150 T.C. at 223. The two Forms 4183 meet that standard, and we conclude that they are sufficient to establish respondent's timely compliance with the requirements of section 6751(b)(1). Accord Blackburn, 150 T.C. at 223-224; Humiston v. Commissioner, T.C. Memo. 2019-9; Bletsas v. Commissioner, T.C. Memo. 2018-128, aff'd, 784 F. App'x 835 (2d Cir. 2019); Kane v. Commissioner, T.C. Memo. 2018-122; Jarrett v. Commissioner, T.C. Memo. 2018-73.

B.    Request for Collection Alternative

Petitioner requested that his account be placed in CNC status, alleging that he had no current ability to pay the tax. Suspension of collection activity is a collection alternative that the taxpayer may propose and that the Appeals Office

must consider.  See sec. 6330(c)(2)(A)(iii), (3)(B).  But to justify an account's being placed in CNC status, the taxpayer must supply evidence of his financial circumstances, including "the money that is available to him and the expenses that he bears."  Pitts v. Commissioner, T.C. Memo. 2010-101, 99 T.C.M. (CCH) 1406, 1411; see sec. 301.6330-1(e)(1), Proced. & Admin. Regs.  An Appeals officer does not abuse his discretion in denying CNC status where the taxpayer has not submitted the necessary financial information.  Wright v . Commissioner, T.C. Memo. 2012-24; Mahlum v. Commissioner, T.C. Memo. 2010-212; Swanton v. Commissioner, T.C. Memo. 2010-140.

The SO gave petitioner repeated opportunities to provide the needed information, but he declined to submit anything.  Petitioner likewise was not in compliance with his tax filing obligations for 2015-2017.  The SO could properly have rejected any proposed collection alternative on that ground alone.  See Cox v. Commissioner, 126 T.C. 237, 258 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008); Hull v. Commissioner, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441.

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the proposed collection action.  We note that petitioner is free to submit to the IRS at any time, for its consideration and possible

acceptance, a proposed collection alternative supported by the required financial information.

 To reflect the foregoing,

    <u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.