T.C. Memo. 2021-10

UNITED STATES TAX COURT

DANA RAY REYNOLDS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9864-18L.                           Filed January 26, 2021.

<u>Alvah Lavar Taylor</u> and <u>Jonathan T. Amitrano</u>, for petitioner.

<u>Eric M. Heller</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  In this collection due process (CDP) case petitioner

seeks review under sections 6320(c) and 6330(d)(1)[1] of respondent's

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are rounded to the

(continued...)

**[\*2]** determination sustaining the filing of a notice of lien and proposed levy. By those collection actions respondent seeks to collect for taxable years 2000 through 2003, pursuant to section 6201(a)(4), restitution-based assessments (RBAs) arising from a Federal District Court order requiring petitioner to pay criminal restitution. The parties submitted this case for decision without trial pursuant to Rule 122.

## Background

A.    The Underlying Criminal Case

Petitioner developed strategies to use corporations to conceal assets and evade income tax. He marketed these strategies through various corporate entities using videotapes, seminars, and written publications. He applied these strategies to his personal finances to conceal assets and pay personal living expenses with funds taken from the corporations but not reported as income. On October 18, 2010, pursuant to a plea agreement, he pleaded guilty to two counts of subscribing false Federal income tax returns under section 7206(1) for taxable years 2002 and 2003. He admitted that he had received unreported income and was liable for the section 6663 civil fraud penalty for each of these years.

---

[1](...continued)
nearest dollar.

[*3]   On October 20, 2010, the U. S. District Court for the Central District of California entered its judgment and probation/commitment order (judgment), sentencing petitioner to 18 months in prison for each of the two counts on which he was convicted, with the terms to be served concurrently, followed by one year of supervised release.  Pursuant to 18 U.S.C. sec. 3663(a)(3) the judgment required petitioner to pay to the United States restitution of $193,812, comprising $20,076, $44,357, $79,537, and $49,842 for taxable years 2000, 2001, 2002, and 2003, respectively.  The District Court waived interest on the restitution pursuant to 18 U.S.C. sec. 3612(f)(3)(A) because "the defendant does not have the ability to pay interest" and ordered that payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. sec. 3612(g).  The District Court ordered that during his imprisonment petitioner pay restitution of at least $25 per quarter and that during the period of his supervised release he make monthly payments of the greater of $100 or 10% of his monthly income.  As a further condition of his supervised release petitioner was ordered to apply against his outstanding court-ordered restitution obligation any income tax refunds or any other "anticipated or unexpected financial gains".

**[*4]** The U.S. Court of Appeals for the Ninth Circuit affirmed petitioner's conviction and his sentence. See United States v. Reynolds, 463 F. App'x 647 (9th Cir. 2011).

After serving his prison time, on July 22, 2011, petitioner was placed on supervised release for one year. On July 22, 2012, his supervised release ended.

B.      Internal Revenue Service Collection Activities

On August 26, 2013, pursuant to section 6201(a)(4) the Internal Revenue Service (IRS) assessed against petitioner restitution of $20,076, $44,357, $79,537, and $49,842 for taxable years 2000, 2001, 2002, and 2003, respectively, exactly matching by year and in total the restitution ordered by the District Court. Respondent also assessed interest of $18,245, $34,651, $54,268, and $30,310 for taxable years 2000, 2001, 2002, and 2003, respectively. Respondent subsequently credited against petitioner's RBA account for taxable year 2000 (ostensibly applying credits for the oldest year first) a $2,174 payment made on October 22, 2012 (ostensibly for court-ordered restitution that petitioner paid while incarcerated or on supervised release). On April 15, 2014, respondent credited against petitioner's RBA for 2000, consistently with the District Court's order, a $3,082 overpayment refund with respect to petitioner's taxable year 2013.

**[\*5]**     Respondent audited petitioner's income tax returns for his taxable years

2002 and 2003.  On November 25, 2013, respondent issued to petitioner a notice

of deficiency, determining deficiencies of $78,787 and $55,319 for taxable years

2002 and 2003, respectively.  In that notice of deficiency respondent also

determined that petitioner was liable for section 6663(a) civil fraud penalties of

$59,090 and $41,489 for taxable years 2002 and 2003, respectively.

Petitioner timely petitioned this Court with respect to the notice of

deficiency dated November 25, 2013.  On October 6, 2015, this Court entered a

stipulated decision that petitioner was liable for deficiencies of $78,787 and

$30,327 for taxable years 2002 and 2003, respectively, and for section 6663(a)

civil fraud penalties of $59,090 and $22,745 for taxable years 2002 and 2003,

respectively.[2]  Respondent abated portions of the RBAs ($750 and $19,515 for

taxable years 2002 and 2003, respectively) equal to the excess of the court-ordered

restitution over the deficiencies for taxable years 2002 and 2003 as determined in

the decision entered by this Court on October 6, 2015.[3]

----

[2]As part of the decision document the parties stipulated "below the line" that petitioner's liability for these penalties had been discharged on Feb. 11, 2010, in a chapter 7 bankruptcy proceeding which petitioner had commenced in 2009.

[3]On brief petitioner states that respondent "erred in making these abatements, and [p]etitioner does not dispute that the restitution-based assessments
(continued...)

**[\*6]** On June 18, 2014, Noe Trujillo (Advisor Trujillo), an advisor in the IRS Collection Advisory Group, secured a copy of the District Court's judgment and made an initial analysis of petitioner's case.[4] He forwarded it for a collection investigation, directing that "[a]ny enforcement action on this account should be coordinated with [Collection] Advisory." Advisor Trujillo directed the revenue officer to "[r]eview Interim Guidance Memorandum SBSE-05-0713-0044 for additional guidance regarding RBA."

Petitioner's case was assigned to Revenue Officer (RO) Martha L. Marquez for investigation. Her initial analysis revealed that for taxable year 2013 petitioner and his wife, Faisuly Reynolds, had filed a joint tax return that included a Schedule C, Profit or Loss From Business (Sole Proprietorship), for American Entrepreneurial Academy (AEA) showing wages paid of $332,800.[5] RO Marquez

---

[3](...continued)
should not have been abated." We do not understand petitioner, in making these observations, to raise any challenge with respect to respondent's action in this regard, which works in petitioner's favor.

[4]The IRS Collection Advisory Group coordinates and monitors probation and restitution cases; the advisor serves as a liaison for coordinating such cases with IRS field offices and the Department of Justice (DOJ). See Internal Revenue Manual (IRM) pt. 5.1.5.16 (Oct. 6, 2017); IRM pt. 5.19.23.1(5) (Oct. 27, 2017); IRM pt. 25.26.1.5.2 (Mar. 24, 2014).

[5]Petitioner's tax return transcripts as included in the record show that
(continued...)

**[*7]** noted in her Integrated Collection System History Transcript that her analysis showed that petitioner and his wife were "receiving large [amounts] of money".

After communicating with the Collection Advisory Group and the Treasury Inspector General for Tax Administration and after attempting unsuccessfully to learn petitioner's home address, on October 28, 2014, RO Marquez made a field visit to petitioner's place of business. She explained to petitioner and his representative, Certified Public Accountant Craig Murrel, who was on a speaker phone, that the IRS and the DOJ would be working simultaneously to get the restitution and the RBAs paid. RO Marquez handed petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (FNIL) with respect to the RBAs made on August 26, 2013. Upon returning to her office, RO Marquez noticed that the FNIL was erroneously addressed to both petitioner and his wife. RO Marquez promptly issued a new FNIL addressed only to petitioner and sent it by certified mail to his last known address, a private mail box. The two Letters

---

[5](...continued)
petitioner and his wife also filed a joint return for taxable year 2012 which included a Schedule C for AEA reporting net gross receipts of $895,373 and total expenses of $1,015,725 (including wages of $175,813) for a reported net loss of $120,352. That 2012 return also included a second Schedule C for a business activity identified only as "SEMINARS", reporting net profit equal to net gross receipts of $132,721. The jointly filed 2013 return included a Schedule C for AEA reporting net gross receipts of $997,045 and total expenses of $987,503 (including $332,800 of wages), for a reported net profit of $9,542.

[*8] 1058 are otherwise identical. Each shows a balance due, including interest and penalties, of $351,292.[6]

On October 30, 2014, Mr. Murrel spoke by telephone with RO Marquez and requested documentation of petitioner's liabilities that respondent was seeking to collect. RO Marquez emailed Advisor Trujillo and requested a copy of the District Court's restitution order.

On November 5, 2014, RO Marquez and Mr. Murrel spoke again by telephone. Mr. Murrel proposed putting petitioner on a payment plan but indicated that he had to consult with petitioner before making a specific proposal. Later that day, RO Marquez mailed Mr. Murrel a letter requesting that by December 9, 2014, petitioner submit financial information for himself and Mrs. Reynolds, including proof of all income, "court orders and verification of payments for 09/01/2014 to present", and a completed and signed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Business. On November 6, 2014, RO Marquez received by fax from Mr. Murrel an updated

---

[6]This amount is made up of "Unpaid Amount from Prior Notices" totaling $326,032 for the taxable years 2000 through 2003, "Additional Penalty" (not otherwise described) totaling $13,307, and "Additional Interest" totaling $11,953.

[*9] Form 2848, Power of Attorney and Declaration of Representative, identifying petitioner as "Ray Reynolds, d.b.a. American Entrepreneurial Academy".

On November 20, 2014, respondent filed a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL) with respect to the RBAs made on August 26, 2013. This NFTL shows a total unpaid assessment balance of $326,100.[7]

On November 26, 2014, Mr. Murrel submitted on petitioner's behalf two Forms 12153, Request for a Collection Due Process or Equivalent Hearing, regarding the FNIL issued on October 28, 2014, and the NFTL filed on November 20, 2014. On each Form 12153 the box was checked indicating "I Cannot Pay Balance". In nearly identical letters attached to the hearing requests petitioner disputed the assessments of interest and penalties and stated that because "OFFERS IN COMPROMISE AND INSTALLMENT PAYMENT PLANS ARE NOT AVAILABLE WITH RESPECT TO RESTITUTION ASSESSMENTS, THE TAXPAYER CANNOT PAY THE REFERENCED AMOUNTS IN FULL AS EARNINGS AND SOURCES OF INCOME FAIL TO YIELD REQUIRED

---

[7]This amount is roughly the same as the total "Unpaid Amount from Prior Notices" shown on the FNIL but without the "Additional Penalty" and "Additional Interest" amounts.

**[\*10]** AFTER TAX CASH FLOW NECESSARY FOR FULL RESOLUTION OF SUCH LIABILITIES."

On December 1, 2014, RO Marquez received and reviewed the Forms 12153. That same day she sent petitioner a letter advising him that for the IRS Office of Appeals (Appeals)[8] to consider a collection alternative he had to submit by December 12, 2014, a completed Form 433-A and a completed Form 433-B. Petitioner failed to submit any of the requested financial information.

On December 22, 2014, RO Marquez consulted with Advisor Trujillo about petitioner's case. On December 29, 2014, she called Mr. Murrel, who indicated that petitioner had hired an attorney to represent him going forward. Mr. Murrel was unable to explain why petitioner had not provided the requested financial information. RO Marquez forwarded petitioner's case to Appeals.

On March 13, 2015, petitioner's case was assigned to Settlement Officer (SO) Scott D. True. On March 23, 2015, petitioner's new counsel, Alvah Lavar Taylor, sent SO True a supplement to petitioner's Forms 12153. On this supplement, boxes were checked indicating, with respect to collection alternatives, "Installment Agreement" and "I Cannot Pay Balance". With respect to "Lien", a

---

[8]This office is now named the "Independent Office of Appeals". See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001(c), 133 Stat. at 985 (2019).

**[*11]** box was checked for "Withdrawal", but the space provided for the form's directive "Please explain:" was left blank. Mr. Taylor's cover letter asserted, among other things, that the IRS improperly assessed interest and penalties in contravention of the District Court's restitution order; that the IRS was bound by the "payment plan" established by the District Court requiring him to pay the greater of $100 or 10% of monthly income; and that the FNIL improperly listed the names of both petitioner and his wife. Mr. Taylor's letter did not expressly address any request for withdrawal of the NFTL.

On July 13, 2016, SO True and petitioner's counsel Jonathan T. Amitrano (Mr. Taylor's co-counsel) met for a face-to-face hearing. They agreed that Mrs. Reynolds' name was improperly included on the FNIL. Mr. Amitrano reiterated petitioner's request that interest and penalties be abated and that, consistently with the District Court's restitution order, petitioner be placed on a plan to pay each month the greater of 10% of monthly income or $100. He urged that in the light of the District Court's restitution order, no collection information statement should be required. SO True indicated that he would solicit the views of the IRS Chief Counsel's Office and that until further notice petitioner did not need to provide a collection information statement.

[*12] On July 15, 2016, SO True requested an advisory opinion from the Chief Counsel's Office. On September 6, 2016, an attorney in the Chief Counsel's Office, Amy A. Long (Attorney Long), informed SO True that petitioner's case would need to be coordinated with respondent's National Office. On October 19, 2016, SO True sent Attorney Long additional documents which she had requested and sent a request for additional information to Advisor Trujillo, who sent the additional requested information to Attorney Long on October 20, 2016.

On May 8, 2017, Mr. Amitrano faxed to SO True, who forwarded to Attorney Long, a copy of a letter dated May 5, 2017, that petitioner had received from the U.S. Attorney's Office for the Central District of California (U.S. Attorney). The letter requested that petitioner appear on May 25, 2017, at the office of the DOJ's Financial Litigation Unit (FLU) to show cause "why you have not entered into arrangements for the payment of the judgment entered against you on October 18, 2010 * * * on which there is a current unpaid balance of $191,637.75." In his cover letter to SO True, Mr. Amitrano stated that he found the U.S. Attorney's letter a "bit confusing as our firm always believed (and we still believe to this day) that restitution is collected by the IRS." That cover letter went on to say that Mr. Amitrano had communicated to the DOJ his understanding that

**[*13]** "the IRS is in charge of collecting the restitution amount, and that our office has been working towards a payment plan with the IRS through a CDP hearing."

In May 2017 the DOJ began issuing to petitioner a monthly "Debtor Statement" showing a $65 payment due from petitioner each month and generally indicating (after the first such statement) receipt of petitioner's timely $65 payment. Since June 2017 petitioner has been making monthly restitution payments of $65 to the U.S. Attorney. The IRS periodically credited these payments against petitioner's RBA for taxable year 2000 (ostensibly crediting the earliest year first).

Meanwhile, SO True had placed petitioner's collection case in suspense status awaiting Attorney Long's advice. On December 6, 2017, Mr. Amitrano was in SO True's office for an in-person hearing on an unrelated case. They walked together to Attorney Long's office to inquire about petitioner's case. Attorney Long indicated that she had not received certain information that she had previously requested, prompting SO True to return to his office and forward to her Advisor Trujillo's email of October 20, 2016, which contained the requested information. On the same day, Attorney Long followed up with an email to SO True requesting additional information. SO True forwarded Attorney Long's

[*14] email to RBA Advisor Mike E. Morris, requesting that he respond to her questions.

On February 20, 2018, SO True noted in his case activity record that he had completed his followup and that he

> should be able to close this [case] sustaining Collection as far as the dispute as to liability. Pursuant to IRM [Internal Revenue Manual] 8.7.1.11(5), the Office of Appeals is not authorized to consider or process criminal restitution appeals. Appeals must not abate or adjust any restitution-based assessment. The judge ordered TP [taxpayer] to pay the greater of $100/mo or 10% of his gross income. That's what goes to DOJ. The IRS can collect more if the TP wants to pay.

After additional research, on February 22, 2018, SO True made another entry in his case activity record, stating among other things:

> The amount of restitution ordered payable to the Service creates two separate debts for the same liability. These two separate debts provide two different means for collection, but the liability cannot be collected twice.
>
> • The first debt is the restitution judgment which the Department of Justice Financial Unit (DOJ FLU) is responsible for collecting.
>
> • The second debt is the restitution-based assessment (RBA) which will be assessed and collected by the Service in the same manner as if it was a tax.

In an entry dated February 23, 2018, SO True noted:

> Per IRM 5.1.5.17.1(1), prior to initiating collection action an RO [revenue officer] will determine the taxpayer's assets and income,

[*15] using the Collection information Statement as an information source, verify information provided by the taxpayer, and in coordination with Advisory and the Department of Justice, determine what, if any, civil enforcement actions may be taken to collect outstanding tax assessments.

On February 26, 2018, SO True reviewed petitioner's IRS account and noted that petitioner and his wife's joint return for taxable year 2016 included a Schedule C reporting gross receipts or sales of $798,652. That same day, SO True mailed to petitioner, with a copy to Mr. Amitrano, a letter requesting that within 14 days, i.e., by March 12, 2018, petitioner provide a completed collection information statement, Form 433-A, as well as any additional information that petitioner wished to provide for consideration. The letter stated: "Once the 14 days have passed, the Appeals Office will make a determination in the hearing you requested by reviewing the Collection administrative file and whatever information you provided." On March 12, 2018, Mr. Amitrano requested, and SO True granted, an extension until March 23, 2018, to submit the requested information.

In the meantime, on March 1, 2018, SO True emailed Attorney Long, stating that he was "getting ready to close" petitioner's case and inquiring how he should address the issue of interest on the restitution. The response came the next day, advising that in accordance with this Court's Opinion in Klein v.

[*16] Commissioner, 149 T.C. 341 (2017), petitioner is not liable for interest and failure-to-pay penalties on the restitution.

On March 23, 2018, Mr. Amitrano faxed to SO True a Form 433-A which indicated that petitioner had zero income, zero living expenses, and no assets other than "Personal Effects" valued at $500. The Form 433-A left blank the questions about petitioner's marital status, his spouse's name and Social Security number, and information about his spouse's employment and any dependents. By way of explanation for these omissions, Mr. Amitrano's cover letter stated that "because Mr. Reynolds and his wife have entered into a postnuptial agreement which provides that all income is separate property, the attached financial statement does not include Mr. Reynolds' wife's income or expenses." The cover letter also stated that petitioner suffered from "multiple severe health issues over the past few years * * * [which] coupled with his prior criminal conviction, have resulted in Mr. Reynolds being unable to find work. As such he currently focuses on being a stay-at-home dad to his two children."

Attached to Mr. Amitrano's letter was a copy of a marital agreement between petitioner and his spouse, identified as Faisuly Herrera Alfonso, dated October 4, 2005, and providing among other things that "[a]ll property of either party that was owned before their marriage * * * will be entirely his or her

[*17] separate property" and that petitioner's interests "in CCBC Corporate Credit Builders.com, Inc., Blackjack Diversified, Inc., We Process For You, Inc. and Ray Reynolds & Associates, LLC shall remain his separate property."

On March 23, 2018, after reviewing petitioner's submission, SO True noted in his case activity record that the time for petitioner to submit additional information had expired and that there were no unresolved issues. He wrote: "At this point it appears this appeal is being maintained primarily for delay. It doesn't appear that TP [taxpayer] has any intention of voluntarily paying his RBA." Stating that "[a]ll issues in this case have been addressed", SO True concluded that the NFIL and the NFTL should be sustained.

On March 26, 2018, SO True forwarded his draft Appeals case memorandum (ACM) to Acting Appeals Team Manager (ATM) Brian Hefty (Acting ATM Hefty) for his review. On April 2, 2018, Acting ATM Hefty and SO True discussed whether an Appeals Referral Investigation (ARI) request should be made to the IRS Collections Division.[9] On April 4, 2018, SO True referred this question to Acting ATM Teresita Paz (Acting ATM Paz), who reviewed

_____

[9]An ARI may be used to verify a taxpayer's collection information statement in various circumstances, including when "[t]he taxpayer provides a new CIS [collection information statement] to Appeals that requires verification and proposes an IA [installment agreement] or CNC [currently not collectible]". IRM pt. 8.22.7.4(1) (Aug. 9, 2017).

[*18] petitioner's case file and conferred with SO True.  On April 6, 2018, SO

True sent the final ACM and closing documents to Acting ATM Paz for her

approval.

On April 17, 2018, Appeals issued to petitioner a notice of determination,

signed by Acting ATM Paz, sustaining the NFIL and the NFTL.  The attachment

to the notice of determination, prepared by SO True, states in part:

> When a restitution amount is assessed under IRC § 6201(a)(4), the
> statutory tax lien arises and the general ten-year statute of limitations
> for collection applies.  IRS will generally collect assessed restitution
> in the same manner as other collection cases.  Collection action will
> be subject to the Collection Due Process rights afforded a taxpayer
> under §§ 6320 and 6330; however you are precluded from contesting
> the existence or amount of the underlying tax liability upon which the
> restitution is based.
>
> *       *       *       *       *       *       *
>
> The amount of restitution ordered payable to the IRS creates two
> separate debts for the same liability.  These two separate debts
> provide two different means for collection, but the liability cannot be
> collected twice.
>
>> •       The first debt is the "restitution judgment" which the
>>         Department of Justice Financial Litigation Unit (DOJ
>>         FLU) is responsible for collecting.
>>
>> •       The second debt is the "restitution-based assessment"
>>         (RBA) which will be assessed and collected by the IRS
>>         in the same manner as if it was a tax.

**[*19]** The attachment acknowledges that pursuant to this Court's decision in <u>Klein</u> <u>v. Commissioner</u>, 149 T.C. 341, petitioner is not liable for failure-to-pay penalties and interest on the RBAs. The attachment indicates that petitioner's request for an installment agreement (IA) was denied, stating:

> The IRS can enter into an installment agreement only if it meets the following requirements:
>
> • the entire amount of restitution ordered is satisfied at the conclusion of the installment agreement,
>
> • the minimum periodic payment under the installment agreement is at least equal to the minimum periodic payment under the court ordered restitution plan, and
>
> • the payment period under the installment agreement is no longer than the payment period of the court ordered restitution plan.
>
> Your Collection Information Statement, Form 433-A for individuals, shows no assets, income or expenses. Your jointly filed Form 1040 return for tax year 2016 contains a Schedule C with $798,652 in gross receipts. You have a postnuptial agreement that you apparently assert prevents the IRS from collecting from community property. Based on the information in the administrative file, it isn't clear that the underlying amount of your restitution-based assessments is currently not collectible.
>
> You claim to have medical issues, but you didn't show why your medical issues prevent you from making any payments on your restitution-based assessments. If, as you claim, you have no expenses, then making payments wouldn't cause an economic hardship.

[*20] The attachment states that petitioner did not request withdrawal of the NFTL. The attachment further states that SO True verified that the requirements of any applicable law or administrative procedure were met, including that the assessments were properly made, and that he balanced the competing interests in sustaining the proposed collection actions.

Petitioner, while residing in California, timely petitioned this Court.

## Discussion

### A. Statutory Framework and Standard of Review

Sections 6320 (pertaining to tax liens) and 6330 (pertaining to levies) establish procedures for administrative and judicial review of collection actions. Section 6330(c)(2) prescribes the matters that a person may raise at an Appeals hearing, including challenges to the appropriateness of the collection action and collection alternatives. In addition to considering issues properly raised by the taxpayer under section 6330(c)(2), the Appeals officer "shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1). The existence or amount of the underlying tax liability may be contested at an Appeals hearing only if the taxpayer received no notice of deficiency or otherwise had no opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C.

**[\*21]** 604, 609 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 180-181 (2000). An issue may not be raised at the hearing if it was raised and considered in any previous administrative or judicial proceeding. Sec. 6330(c)(4)(A).

Where the underlying liability is not properly at issue in a collection proceeding, we review Appeals' determination for abuse of discretion, asking whether it was arbitrary, capricious, or without sound basis in fact or law. <u>See, e.g.</u>, <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Sego v. Commissioner</u>, 114 at 610.[10] As this Court has acknowledged, however: "When faced with questions of law * * * the standard of review makes no difference. Whether characterized as a review for abuse of discretion or as a consideration 'de novo' (of a question of law), we must reject erroneous views of the law." <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 75 (2005).

---

[10]Absent a stipulation to the contrary, an appeal in this case would normally lie with the U.S. Court of Appeals for the Ninth Circuit. Sec. 7482(b)(1)(G)(i). Under Ninth Circuit precedent the scope of our review is generally limited to the administrative record. <u>See</u> <u>Keller v. Commissioner</u>, 568 F.3d 710, 718 (9th Cir. 2009) (adopting <u>Robinette v. Commissioner</u>, 439 F.3d 455, 459-460 (8th Cir. 2006), <u>rev'g</u> 123 T.C. 85 (2004)), <u>aff'g in part as to this issue</u> T.C. Memo. 2006-166, <u>and aff'g in part, vacating in part decisions in related cases</u>. Sec. 301.6330-1(f)(2), Q&A-F4, Proced. & Admin. Regs., defines the administrative record as Appeals' case file, including "any * * * documents or materials relied upon by the Appeals officer * * * in making the determination under section 6330(c)(3)".

**[\*22]** Respondent has conceded that petitioner is not liable for interest or penalties with respect to the court-ordered restitution, and the notice of determination so states. In this proceeding petitioner has raised no other challenge to his underlying liability as relates to his court-ordered restitution, nor is he entitled to do so. See sec. 6201(a)(4)(C) ("The amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized under this title[.]"); Carpenter v. Commissioner, 152 T.C. 202, 219 (2019) ("A taxpayer is strictly prohibited from challenging the existence or amount of an underlying tax liability that is related to an order of criminal restitution."), aff'd, 788 F. App'x 187 (4th Cir. 2019).

In this proceeding petitioner challenges respondent's collection authority under section 6201(a)(4) as well as his exercise of discretion. We address these challenges in turn.

B. Respondent's Legal Authority to Collect RBAs

1. Carpenter v. Commissioner

Petitioner contends that respondent lacks the legal authority to take administrative collection action to collect RBAs under section 6201(a)(4). Acknowledging that this argument was squarely rejected in Carpenter v.

**[\*23]** <u>Commissioner</u>, 152 T.C. 202, petitioner invites us to reconsider our holding in <u>Carpenter</u>. We decline the invitation.

Petitioner contends that this Court's Opinion in <u>Carpenter</u> conflicts with the rationale of <u>Klein v. Commissioner</u>, 149 T.C. 341. We disagree. <u>Klein</u> held that section 6201(a)(4) does not authorize the IRS to add underpayment interest or failure-to-pay penalties to a title 18 restitution award. The IRS' authority to collect restitution was not in dispute in <u>Klein</u> because the taxpayers had fully paid the restitution. In <u>Carpenter</u>, in holding that section 6201(a)(4) grants the IRS independent authority to collect administratively title 18 restitution awards assessed under that section, the Court carefully considered the text and legislative history of section 6201(a)(4) as well as other relevant provisions of titles 18 and 26 and relevant caselaw. The Court of Appeals for the Fourth Circuit summarily affirmed this Court's decision in <u>Carpenter</u> "for the reasons stated by the tax court." <u>Carpenter v. Commissioner</u>, 788 F. App'x at 187.

Petitioner does not dispute that the court-ordered restitution was currently due and payable when respondent instituted the collection actions at issue. Pursuant to section 6201(a)(4), respondent was authorized to proceed to collect the RBAs by lien and levy. See <u>Carpenter v. Commissioner</u>, 152 T.C. at 218.

**[*24]** 2.      Effect of the DOJ "Payment Plan"

Petitioner contends that even if respondent generally has the authority to pursue administrative collection under section 6201(a)(4), he is barred from collecting petitioner's RBAs because the "DOJ has already made a determination that the Petitioner should pay $65 per month." Petitioner argues that section 6331(k)(2)(C) bars respondent from collecting his outstanding restitution while this alleged "payment plan" with the DOJ is in effect.

Petitioner's argument is without merit. In the first instance, petitioner has provided no evidence of any formal payment plan with the DOJ. The record merely shows that in May 2017 the DOJ began billing petitioner $65 a month and that since June 2017 he has generally been making monthly restitution payments of $65 to the U.S. Attorney. Regardless of how these payments might be characterized, they were not the result of any installment agreement under section 6159, which authorizes the Secretary to enter into installment agreements for the payment of taxes. Consequently, section 6331(k)(2)(C), which generally bars the IRS from making a "levy" on a person's property while an installment agreement under section 6159 is in effect, is inapplicable--not only because there was no installment agreement under section 6159 in effect but also because by its terms section 6159 does not bar the IRS from issuing either an FNIL or an NFTL, which

[*25] are the collection actions at issue in this proceeding. See Eichler v. Commissioner, 143 T.C. 30, 37 (2014) (construing section 6331(k)(2)(A) and (B)); sec. 301.6331-4(b)(1)(ii), Proced. & Admin. Regs. Moreover, because petitioner did not begin making his monthly payments to the DOJ until long after respondent had issued to him the FNIL and the NFTL, those payments had no effect on respondent's authority to take these collection actions.

## C.     Exercise of Discretion

In deciding whether SO True abused his discretion in sustaining the collection actions, we consider whether he: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3); see also Pazzo Pazzo, Inc. v. Commissioner, T.C. Memo. 2017-12, at *20. For the reasons discussed below, we conclude that SO True did not abuse his discretion.

### 1.     Coordination With the DOJ

Petitioner argues that SO True failed the verification requirement of section 6330(c)(1) by failing to ensure that the IRS collection efforts were properly

**[\*26]** coordinated with the DOJ, as he contends the Internal Revenue Manual (IRM) requires.  Petitioner cites, and we have found, no case in which an SO flunked the verification requirement with respect to an IRM provision.  In <u>Weiss v. Commissioner</u>, 147 T.C. 179 (2016), <u>aff'd</u>, 2018 WL 2759389 (D.C. Cir. May 22, 2018), this Court upheld the SO's determination sustaining a notice of intent to levy even though the determination failed to take into account IRM directives that the date on the levy notice should match the mailing date.  The Court noted:  "The IRM lacks the force of law and does not create rights for taxpayers." <u>Id.</u> at 196.  Similarly, in <u>Walker v. Commissioner</u>, T.C. Memo. 2018-22, citing <u>Weiss</u>, this Court held that the Commissioner did not err in sustaining lien and levy collection actions notwithstanding alleged failure to comply with IRM mailing procedures for statutory notices.  <u>See also</u> <u>Urban v. Commissioner</u>, 964 F.2d 888, 890 (9th Cir. 1992) (noting that the Commissioner's "compliance with the IRM's requirements is not mandatory"), <u>aff'g</u> T.C. Memo. 1991-220; <u>Ward v. Commissioner</u>, 784 F.2d 1424, 1430-1431 (9th Cir. 1986) (stating that policies directed at governing IRS conduct are not mandatory), <u>aff'g</u> T.C. Memo. 1984-570; <u>cf</u>. <u>Wadleigh v. Commissioner</u>, 134 T.C. 280, 294 n.13 (2010) (declining to decide whether IRM procedures fall under the verification requirement of section 6330(c)(1)).

[*27] In any event, the record does not support petitioner's contention that the IRS failed to coordinate its collection efforts with the DOJ. When Advisor Trujillo was assigned to petitioner's case on June 18, 2014, the IRM directed advisors to "coordinate[] civil and criminal aspects of probation and restitution cases with Field Area ROs, other internal customers, U.S. Probation, and the Department of Justice Financial Litigation Units." IRM pt. 5.19.23.1.3(4) (June 6, 2014). In fulfillment of those responsibilities, Advisor Trujillo secured a copy of the District Court's judgment and sent petitioner's case to Collections for investigation with the instruction that "[a]ny enforcement action on this account should be coordinated with Advisory".

The Interim Guidance Memorandum (IGM) then in effect provided instructions "for Collection employees working Federal restitution cases." IRS Memo. SBSE-05-0713-0044, at 1 (July 10, 2013). The IGM explained that "[b]ecause the DOJ retains its ability to enforce the restitution order while the Service has a parallel ability to collect administratively, communication with the DOJ is important prior to taking enforcement action to collect restitution-based assessments." Id. at 3. According to the IGM, collection advisors "will be familiar with the court order and conditions of probation and should be contacted by the RO for guidance on how to coordinate with the local FLU", and such

[*28] advisors "will be able to advise the RO regarding appropriate actions to take and will facilitate coordination and communication with CI [the IRS Criminal Investigations Unit], the U.S. Probation Officer, and the DOJ <u>when necessary</u>." <u>Id.</u> at 3-4 (emphasis added).

Consistently with these directives, after completing her initial analysis of petitioner's case and before taking any further actions, RO Marquez contacted Advisor Trujillo. The record indicates that RO Marquez and Advisor Trujillo had ongoing communications about petitioner's case. By the time RO Marquez transferred petitioner's case to Appeals, the IRM had been updated to state that "Revenue Officers will contact an advisor prior to taking administrative enforcement action to collect RBAs. The advisor is responsible for coordinating civil actions with the Department of Justice Financial Litigation Unit (DOJ FLU)." IRM pt. 5.1.5.18(2) (Dec. 16, 2014). RO Marquez fulfilled her responsibilities as set forth in the IRM with regard to coordinating petitioner's case with the DOJ.

Petitioner suggests that SO True erred by failing to coordinate with the DOJ. We disagree. In March 2015 when SO True was assigned petitioner's case, the IRM stated that "Advisory is responsible for monitoring and coordinating actions on probation and restitution cases." IRM pt. 5.1.5.16(1) (Dec. 16, 2014);

**[\*29]** <u>see also</u> IRM pt. 25.26.1.5.2(2) (Mar. 24, 2014).[11]  The IRM instructed the

Appeals officer to "[c]ontact Area Counsel for guidance" in cases where the DOJ

has the sole authority to settle or otherwise compromise the liabilities at issue.

IRM pt. 8.22.6.9(2) (Nov. 5, 2013).

The record shows that SO True had ongoing communications about

petitioner's case with both collections advisors and Attorney Long.  In May 2017

Mr. Amitrano sent to SO True a copy of the letter from the U.S. Attorney

requesting that petitioner appear at the DOJ FLU office to discuss payment

arrangements for petitioner's restitution balance.  Consistently with the directives

of the IRM, SO True immediately forwarded the letter to Attorney Long for her

consideration.

The record before us does not contain the work records of the collection

advisors or Attorney Long by which we might evaluate the nature or extent of

their coordination with each other or with the DOJ.  The record does show,

---

[11]The IRM was subsequently amended to clarify the Collection Advisory Group's responsibility for coordinating collection actions with the DOJ FLU.  <u>See</u> IRM pt. 5.1.5.18.4 (Oct. 6, 2017); IRM pt. 5.1.5.18 (Dec. 16, 2014).  The IRM states that "[c]oordination is necessary because the DOJ has the ability to collect the restitution judgment while the Service may administratively collect the RBA."  IRM pt. 5.1.5.18.1(3) (Dec. 16, 2014).  The IRM notes:  "If not coordinated, actions could result in potential double collection, conflict of jurisdictions, or communications that might be confusing to the taxpayer."  <u>Id.</u>

[*30] however, that at the commencement of the IRS' administrative collection efforts, Advisor Trujillo secured a copy of the District Court's judgment and forwarded it to appropriate IRS collections personnel. The record also shows that petitioner's RBAs were periodically credited with petitioner's payments to the DOJ and with a tax refund from 2013.[12] These actions evidence coordination between the IRS and the DOJ to help ensure against double collection of the restitution, consistently with the stated purposes of the IRM provisions in question. See IRM pt. 5.1.5.15.7(3), 5.1.5.18.1(3) (Mar. 16, 2016). The IRM otherwise specifies no express standard by which to judge the sufficiency or efficacy of coordination between the IRS and the DOJ. We do not believe that remanding this case to Appeals for further consideration of this issue would serve any meaningful purpose. To further ensure against double collection of the restitution, as part of our decision in this case we will order that petitioner's RBAs be credited with any restitution payments he has made to the DOJ.

---

[12]Petitioner's IRS account transcripts show credits against his RBAs for: (1) payments that petitioner apparently made to the DOJ while he was incarcerated and on supervised release, (2) a tax refund from petitioner's taxable year 2013, and (3) $65 monthly payments (or the equivalent thereof) that petitioner made to the DOJ beginning in May 2017. Although it would appear that there has been some lag in the crediting of petitioner's monthly payments against his RBAs, we do not view any such lag as necessarily indicating a failure of coordination between the IRS and the DOJ. As a practical matter some lag seems inevitable.

**[\*31]** 2.     <u>Installment Agreement Proposal</u>

Section 6159(a) authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installments if it is deemed that the "agreement will facilitate full or partial collection of such liability." The decision whether to accept or reject installment agreements lies within the discretion of the Commissioner. <u>Thompson v. Commissioner</u>, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. The Court does not make an independent determination of what would be an acceptable collection alternative. <u>Thompson v. Commissioner</u>, 140 T.C. at 179. If the SO followed all statutory and administrative guidelines and provided a reasoned, balanced decision, the Court will not reweigh the equities. <u>Id.</u>

We have generally held that there is no abuse of discretion when an Appeals officer relies on guidelines published in the IRM to evaluate a proposed IA. <u>See, e.g.</u>, <u>Orum v. Commissioner</u>, 123 T.C. 1, 13 (2004), <u>aff'd</u>, 412 F.3d 819 (7th Cir. 2005); <u>Tillery v. Commissioner</u>, T.C. Memo. 2015-170; <u>Maselli v. Commissioner</u>, T.C. Memo. 2010-19. At all relevant times the IRM has stated that "[t]he IRS may not enter into an IA that would ultimately result in the taxpayer paying an amount less than, or less frequently than, a court ordered restitution payment plan." IRM pt. 5.1.5.18.5(1) (Oct. 6, 2017). The IRM further states that "[t]he IRS should

**[\*32]** enter into an IA only if * * * the entire amount of restitution ordered is satisfied at the conclusion of the IA." Id. pt. 5.1.5.18.5(2).

In his supplement to the Forms 12153 and again during his administrative CDP hearing, petitioner requested an IA whereby he would pay each month the greater of 10% of his monthly income or $100.[13] Petitioner's Form 433-A indicated that he had zero income and no prospects for any income. Consequently, petitioner was essentially proposing to pay $100 per month. Petitioner does not meaningfully dispute that his proposed partial payment installment agreement (PPIA) would not have resulted in his satisfying the entire amount of his RBAs. He contends, however, that SO True nevertheless abused his discretion in rejecting the proposed PPIA because "there is no statute which prohibits such an agreement and * * * the DOJ, which is given authority to collect unpaid restitution obligations, itself entered into such an agreement with petitioner."

Petitioner's arguments lack merit. Although section 6159 permits the Secretary to enter into installment agreements to facilitate the full or partial collection of "any tax", nothing in the statute requires the Secretary to enter into a

---

[13]This payment was the same one the District Court's judgment required during the period of petitioner's supervised release. By the time respondent commenced the collection actions that are the subject of this proceeding, however, the term of petitioner's supervised release had ended; respondent was not constrained by the payment terms in the judgment.

**[*33]** PPIA with respect to court-ordered criminal restitution. SO True adhered to the relevant IRM provisions in rejecting petitioner's proposed IA because it would not result in full payment of his court-ordered restitution within the statutory period for collection. We find no abuse of discretion in this regard. See Indus Grp., Inc. v. Commissioner, T.C. Memo. 2019-68, at *11 ("An SO does not abuse her discretion by adhering to IRM provisions governing acceptance of collection alternatives."); Ragsdale v. Commissioner, T.C. Memo. 2019-33, at *34 (holding that an offer-in-compromise that failed to provide for full payment of criminal restitution was not an abuse of discretion); Rebuck v. Commissioner, T.C. Memo. 2016-3, at *14-*15 (same).

      3.    Rejection of Currently Not Collectible Status

In certain circumstances a taxpayer's account may be placed in currently not collectible (CNC) status, which has the effect of suspending all collection action against that taxpayer. Wright v. Commissioner, T.C. Memo. 2012-24, slip op. at 7.

> Suspension of collection activity is a collection alternative that the taxpayer may propose and that the Appeals Office must consider. See sec. 6330(c)(2)(A)(iii), (3)(B). But to justify an account's being placed in CNC status, the taxpayer must supply evidence of his financial circumstances, including "the money that is available to him and the expenses that he bears." Pitts v. Commissioner, T.C. Memo. 2010-101, 99 T.C.M. (CCH) 1406, 1411; see sec. 301.6330-1(e)(1),

[*34] Proced. & Admin. Regs.  An Appeals officer does not abuse his dis-
cretion in denying CNC status where the taxpayer has not submitted
the necessary financial information.  Wright v. Commissioner, T.C.
Memo. 2012-24; Mahlum v. Commissioner, T.C. Memo. 2010-212;
Swanton v. Commissioner, T.C. Memo. 2010-140.

Chadwick v. Commissioner, 154 T.C. 84, 95 (2020).

Petitioner contends that respondent abused his discretion by rejecting

petitioner's request for CNC status based on economic hardship.  As a preliminary

matter, we note that this issue has little bearing on that part of respondent's

determination sustaining the NFTL.  Even if petitioner had been granted CNC

status, respondent still would have been entitled to take steps to protect IRS

interests, such as by filing an NFTL.  See Kyereme v. Commissioner, T.C. Memo.

2012-174 (holding that it was not an abuse of discretion for the Commissioner to

deny lien withdrawal to a taxpayer who had been previously placed in CNC

status); IRM pt. 5.16.1.2.9(3) (Dec. 17, 2015) (explaining that where an RBA

account is closed because of CNC hardship, "[t]he government may take steps to

protect its interest, such as filing a NFTL").

By contrast, levy action would be prohibited if respondent had determined

that a levy would create economic hardship because of petitioner's financial

condition.  See sec. 6343(a)(1)(D).  Consequently, the issue of whether respondent

abused his discretion in denying petitioner's request for CNC status is relevant

**[\*35]** mainly to that part of respondent's determination sustaining the FNIL. For the reasons discussed below, we conclude that respondent did not abuse his discretion in this regard.

Petitioner's Form 433-A, submitted in 2018, listed no income, no expenses, and no assets (not even a bank account) apart from $500 of "personal effects". Petitioner left blank those portions of the Form 433-A that called for information about his marital status and his spouse, including her identifying information and wage earnings. Mr. Amitrano's cover letter indicated that petitioner's spouse's information was omitted because of the existence of a 2005 marital agreement, a copy of which was attached to the letter.

After reviewing these statements SO True determined that petitioner had failed to show that his RBAs were not currently collectible, noting in his case activity record: "At this point it appears this appeal is being maintained primarily for delay." Petitioner contends that SO True abused his discretion by not doing more to investigate petitioner's financial circumstances. Citing IRM pt. 8.22.7.4 (Aug. 9, 2017), petitioner contends that SO True should have asked an RO to conduct a field investigation to verify petitioner's statements. The IRM provision petitioner cites states in pertinent part that an ARI "may be necessary" if the appropriateness of "CNC hardship can't be determined without additional

**[\*36]** information that Appeals can't secure from internal sources or the taxpayer".

IRM pt. 8.22.7.4(1). The record shows that before issuing the notice of determination SO True did in fact consult with both Acting ATM Hefty and Acting ATM Paz as to whether an ARI was necessary. Although the record does not reveal the details of these consultations, it strongly suggests that Acting ATM Paz agreed that an ARI was unnecessary, given that she approved and signed the notice of determination as prepared by SO True without further investigation.

The attachment to the notice of determination references various circumstances supporting a conclusion that petitioner's Form 433-A was unreasonable on its face, making further investigation unnecessary. As the notice of determination notes, petitioner's Form 433-A reported no assets (not even a bank account), income, or expenses even though Schedule C of his and his wife's joint return for taxable year 2016 (apparently petitioner's most recently filed tax return at the time of SO True's determination) showed $798,652 of gross receipts.[14] Petitioner's Form 433-A also appears deficient on its face in that it fails

---

[14]Petitioner does not dispute that his name and Social Security number appear on this Schedule C but suggests, without any supporting evidence, that "there are possible explanations for this", positing that return preparation software used to prepare the return might have automatically listed petitioner's Social Security number "even though the schedule C business may be the separate property of the taxpayer's spouse." We find this unsupported assertion

(continued...)

[*37] to list any liquid assets to fund his monthly restitution payments to the DOJ, does not list any such payments as expenses, and does not list any bank account from which any such payments would have been made.

The attachment to the notice of determination also notes petitioner's reliance on the marital agreement as allegedly preventing respondent from collecting from community property. We need not decide whether this agreement was valid. Even if it were valid, respondent was entitled to require petitioner to provide financial information about the nonliable spouse. See Ranuio v. Commissioner, T.C. Memo. 2010-178; sec. 301.7122-1(c)(2)(ii), Proced. & Admin. Regs. As noted, petitioner's Form 433-A failed to provide information, as required, about his spouse and her earnings.

Furthermore, as noted in the attachment to the notice of determination, although petitioner claimed to have medical problems, he provided no information as to how those medical problems would impair his ability to make payments on

---

[14](...continued)
unconvincing, particularly in the light of other evidence in the administrative record showing that for earlier years petitioner and his wife's jointly filed tax returns showed similarly substantial amounts of Schedule C gross receipts from AEA and that petitioner's representative, Mr. Murrel, had previously submitted to the IRS a Form 2848 identifying petitioner as "Ray Reynolds, d.b.a. American Entrepreneurial Academy".

[*38] his RBAs. Nor did he list any medical expenses--or any other living expenses--on his Form 433-A.

The attachment to the notice of determination indicated that in the absence of any claimed living expenses, petitioner had failed to demonstrate economic hardship justifying CNC status, stating that "[i]f, as you claim, you have no expenses, then making payments wouldn't cause an economic hardship." As this statement suggests, if it were true, as petitioner claimed, that he had no assets, then there was no levy source at the time of the determination; if, however, a levy source were subsequently to become available, by petitioner's own admission he had no living expenses that would cause a levy to give rise to economic hardship.[15] Consequently, even accepting at face value the financial information petitioner submitted, respondent did not abuse his discretion in determining, on the basis of the information that petitioner provided, that he did not qualify for CNC status.

4.    Withdrawal of NFTL

Petitioner contends that SO True abused his discretion by failing to consider petitioner's request that the NFTL be withdrawn. Respondent contends that

---

[15]It is unnecessary to have a levy source at the time an FNIL is issued. See IRM pt. 5.11.1.3.3 (Jan. 1, 2016).

**[*39]** petitioner did not properly raise this issue during his CDP hearing and so is foreclosed from raising it in this proceeding.

In reviewing a determination under section 6330(c)(2) including challenges to the underlying liability, we consider only issues that the taxpayer properly raised during the CDP hearing. Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Lunnon v. Commissioner, T.C. Memo. 2015-156, aff'd, 652 F. App'x 623 (10th Cir. 2016). The taxpayer does not properly raise an issue during the hearing if he "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A F-3, Proced. & Admin. Regs.

The record indicates that during his CDP hearing petitioner never expressly raised the issue of withdrawal of the NFTL apart from checking the box "Withdrawal" on his supplemental Form 12153 and even then did not provide the explanation called for on the form. Petitioner's counsel's letter which accompanied the supplemental Form 12153 made no mention of any request for withdrawal of the NFTL. The record does not indicate that petitioner ever presented to Appeals any evidence with respect to this issue during the CDP

**[\*40]** hearing; the notice of determination states that during the CDP hearing petitioner "didn't request lien withdrawal." We conclude that petitioner has not properly raised the issue before either Appeals or this Court. See LG Kendrick, LLC v. Commissioner, 146 T.C. 17, 39 (2016) ("Although petitioner checked the box for 'Lien Withdrawal' on its section 6320/6330 request, it did not present the Appeals Office with any evidence regarding its entitlement to a withdrawal of the NFTL filing and therefore did not properly raise the issue before the Appeals Office or this Court."), aff'd, 684 F. App'x 744 (10th Cir. 2017).

In any event, in this proceeding petitioner has not adequately explained on what grounds withdrawal of the NFTL would be appropriate. Section 6323(j) permits the Secretary to withdraw an NFTL if he determines, among other things, that "the withdrawal of such notice will facilitate the collection of the tax liability" or "the withdrawal of such notice would be in the best interests of the taxpayer \* \* \* and the United States." Section 6323(j) uses discretionary, not mandatory, terms, and the Secretary is not required to withdraw an NFTL even for one of the reasons stated in section 6323(j). See Taggart v. Commissioner, T.C. Memo. 2013-113; sec. 301.6323(j)-1(c), Proced. & Admin. Regs.

On brief petitioner argues primarily that the NFTL was improper because, he says, respondent lacks the authority under section 6201(a)(4) to collect RBAs.

[*41] For reasons previously explained, we reject this argument. Petitioner also argues that respondent should be required to withdraw the NFTL and reissue it to omit the interest and penalties, consistently with the determination in the notice of determination that petitioner is not liable for interest and penalties on his RBAs. Respondent represents that he intends to abate the interest and penalties and file a corrected NFTL that accurately reflects petitioner's liability. In these circumstances, we do not believe that it is necessary or would be productive to remand this case to Appeals for this purpose. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); see also Carpenter v. Commissioner, 152 T.C. at 220-222.

D.    Conclusion

We have declined petitioner's invitation to reconsider our holding in Carpenter v. Commissioner, 152 T.C. 202, upholding the Secretary's independent authority to assess and administratively collect criminal restitution. We have also rejected petitioner's argument that respondent is otherwise barred from collecting the unpaid RBAs. Furthermore, respondent's determinations in the notice of determination were not the result of any abuse of discretion. Accordingly, except with respect to the conceded amounts of interest and penalties, we sustain the

[*42] NFTL and the FNIL insofar as the amounts do not exceed petitioner's unpaid balance of criminal restitution.[16]

We have considered all the parties' arguments and conclude that, to the extent not discussed above, they are moot, irrelevant, or without merit.

To reflect the foregoing,

> An appropriate order and decision will be entered.

---

[16]We expect respondent to take into account any payments that petitioner has made to the DOJ with respect to his criminal restitution and to file a corrected NFTL that accurately reflects petitioner's outstanding balance.